UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS V. WILDER, as he is TRUSTEE OF THE NEWBURY-284 NOMINEE TRUST, and DAVID J. MALLEN, as he is TRUSTEE OF THE NEWBURY-284 NOMINEE TRUST,<br><br>*Plaintiffs*,<br><br>v.<br><br>GBG USA INC. f/k/a LF USA INC.,<br><br>*Defendant*. | Case No. _____ |

## **COMPLAINT**

Plaintiffs, Thomas V. Wilder, as he is Trustee of the Newbury-284 Nominee Trust, and David J. Mallen, as he is Trustee of the Newbury-284 Nominee Trust (collectively, "Landlord"), by and through undersigned counsel, hereby assert claims for breach of guaranty against Defendant GBG USA Inc. f/k/a LF USA Inc. ("Guarantor"), and allege as follows:

## **PARTIES**

1. Plaintiff THOMAS V. WILDER is a resident of West Newton, Massachusetts and is a Trustee of the Newbury-284 Nominee Trust (the "Trust"). The Trust is a Massachusetts realty trust under Declaration of Trust dated November 7, 1996, and recorded with the Suffolk Registry of Deed at Book 21014, Page 156. The Trust holds title to certain property in Massachusetts, including a property located at 284 Newbury Street, Boston, Massachusetts (the "Premises"). The principal place of business of the Trust is located at 800 Boylston Street, Suite 1300, Boston, Massachusetts.

2. Plaintiff DAVID J. MALLEN is a resident of North Andover, Massachusetts and is a Trustee of the Trust.

3. Defendant GBG USA Inc. (formerly known as LF USA, Inc.) is a corporation organized under the laws of the State of Delaware with its principal place of business at 350 Fifth Avenue, 10th Floor, New York, New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different States and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interests and costs.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS

6. On or about August 31, 2012, Landlord and Frye Retail, LLC ("Tenant") entered into a lease (the "Lease"), attached hereto as **Exhibit 1**, for the Premises. The term of the Lease ran through April 30, 2025.

7. On or about August 31, 2012, Defendant executed a guaranty to and for the benefit of Landlord (the "Guaranty"), attached hereto as **Exhibit 2**, whereby Defendant "unconditionally and absolutely personally guarantee[d] the full performance and observance of all the terms, covenants, conditions, and agreements contained in the Lease on the part of the Tenant to be performed and observed."

8. Pursuant to Article 3 of the Lease, Tenant agreed to pay Landlord "Minimum Rent" as described in the Lease. In addition, Tenant agreed to pay to Landlord its portion of annual "Real

Estate Taxes," pursuant to Article 4 of the Lease, and "Operating Costs," pursuant to Article 5 of the Lease. Taken together, all of these constitute Tenant's "Rent."

9. At some point thereafter, Tenant took occupancy and began to operate a retail business at the Premises.

10. On or about May 2, 2019, Landlord and Tenant executed an Amendment of Lease (the "First Amendment of Lease"), attached hereto as **Exhibit 3**, which contains a "Confirmation of Guaranty" whereby Defendant consented to the amendment and "confirm[ed] the continuing applicability of said guaranty to the Lease."

11. Tenant did not pay Rent in April 2020.

12. Pursuant to written notice dated April 17, 2020, Tenant was notified that it was in default of its obligations under the Lease and that it had ten (10) days to cure its default.

13. On or about April 23, 2020, Defendant wrote to Landlord on Tenant's behalf and stated that Tenant was excused from performance of its obligations under the Lease due to the impact of COVID-19 and the governmental response thereto. Defendant stated that "we have no alternative but to cease paying any rent during the time the Premises are closed."

14. Tenant did not cure its default.

15. Tenant has not made any payments to Landlord since March 9, 2020.

16. On or about August 31, 2020, Landlord and Tenant executed another Amendment of Lease (the "Second Amendment of Lease"), attached hereto at **Exhibit 4**. The Second Amendment of the Lease provides that, "[e]ffective upon execution and delivery hereof by both parties, Tenant surrenders possession of the Premises to Landlord and disclaims any intention thereafter to repossess, use, occupy or utilize the Premises for any purpose." It also states that the terms of the Second Amendment of Lease "shall in no event be construed as (a) limiting Landlord's

right to enforce the provisions of the Lease or (b) releasing Tenant or any guarantor of Tenant's obligations from any liability thereunder."

17. The Second Amendment of Lease contains a "Confirmation of Guaranty" whereby Defendant "consents to the foregoing amendment and confirms the continuing applicability of said guaranty to the Lease as amended hereto."

18. Landlord terminated the Lease pursuant to Section 11.1 of the Lease by written notice from Landlord to Tenant dated October 9, 2020, attached hereto as **Exhibit 5**, with a copy to Defendant.

19. Section 11.1.3(b) of the Lease states that, at any time after termination of the Lease, "as liquidated final damages and in lieu of all such current damages beyond the date of such demand, at Landlord's election, Tenant shall pay to Landlord an amount equal to the projected excess, if any, of the Minimum Rent and other sums which would be payable hereunder from the date of such demand over the then fair market rental value of the Premises for the same period, reasonably discounted to present value."

20. Section 11.1.3(d) of the Lease states that "[a]ll reasonable costs and expenses incurred by or on behalf of Landlord (including without limitation reasonably attorneys' fees and expenses) in enforcing its rights hereunder or occasioned by Tenant shall be paid by Tenant within thirty (30) days' demand as additional rent."

21. Section 4 of the Guaranty states that the Guaranty "may be enforced by Landlord without first resorting to or exhausting any other security or collateral and without proceeding against Tenant or any co-guarantor."

22. On October 9, 2020, Landlord sent a written demand for payment to Defendant, attached hereto as **Exhibit 6**. In its written demand, Landlord notified Defendant that it elected to

receive liquidated final damages pursuant to Section 11.1.3(b) of the Lease and that the outstanding balance due under the Lease plus the liquidated final damages totaled $5,726,288.72, exclusive of Landlord's attorneys' fees and other expenses.

23. Defendant did not respond to Landlord's October 9, 2020 written demand.

24. Defendant guaranteed the payment of Rent and other amounts due under the Lease on the terms set forth in the Guaranty, and Defendant reaffirmed the continuing applicability of the Guaranty to the Lease in the First Amendment of Lease and, most recently on August 31, 2020, the Second Amendment of Lease.

25. Pursuant to Section 11.1.3(d) of the Lease and the terms of the Guaranty, as well as Section 4 of the Guaranty, Defendant is obligated to reimburse Landlord for its attorneys' fees, costs, and expenses incurred in the pursuit of enforcing its rights under the Lease and the Guaranty.

26. Despite Landlord's notice to Defendant of Tenant's default under the Lease and the subsequent termination of the Lease, and its written demand to Defendant dated October 9, 2020, Defendant has not fulfilled its obligations under the Guaranty.

27. Defendant owes Landlord the sum of $5,726,288.72 plus legal fees and expenses incurred by Landlord in pursuing its rights under the Lease and Guaranty.

## **CLAIMS**

### COUNT I
(Breach of Guaranty)

28. Plaintiffs incorporate the allegations contained in the preceding paragraphs as if fully set forth herein.

29. In consideration of the execution and delivery of the Lease between Landlord and Tenant, Guarantor guaranteed to Landlord that upon a default by Tenant, it would make payments required of Tenant under the Lease pursuant to the terms of the Guaranty.

30. Tenant failed to pay Rent, as required by the Lease, and defaulted under Section 11.1 of the Lease.  Landlord subsequently terminated the Lease pursuant to Section 11.1 of the Lease.

31. Defendant breached the Guaranty by failing to make payments due and payable to Landlord upon Tenant's default, including but not limited to attorneys' fees and expenses.

32. As a result of Defendant's failure to make the required payments to Landlord under the Guaranty, Landlord has suffered financial harm and will suffer further financial harm.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) Enter judgment in favor of Plaintiffs on Count I, in an amount of $5,726,288.72 plus attorneys' fees and expenses;

(b) Award Plaintiffs their interest and costs;

(c) Enter such other and further relief as is just.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

THOMAS V. WILDER, as he is TRUSTEE OF THE NEWBURY-284 NOMINEE TRUST, and DAVID J. MALLEN, as he is TRUSTEE OF THE NEWBURY-284 NOMINEE TRUST

By their attorney,

/s/ Vincent J. Pisegna
Vincent J. Pisegna, BBO# 400560
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue, 19th Floor
Boston, MA 02210
Phone: (617) 482-7211
Fax: (617) 482-7212
vpisegna@kb-law.com

Dated:  November 3, 2020

3749\0001\659271.1