UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS V. WILDER, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>GBG USA INC.,<br><br>*Defendant*. | Case No. 1:20-cv-11987-DLC |

**FED. R. CIV. P. 56(D) RESPONSE TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This is not a cut and dry collections case.  There are factual disputes on the issues of liability and damages that require discovery.  Defendant GBG USA Inc. (GBG or Guarantor) guaranteed the performance of Frye Retail, LLC's (Tenant) obligations under a commercial lease, including the obligation to pay rent.  Tenant operated a retail business from the demised premises located on Newbury Street until it was forced to close as a result of COVID-19 restrictions.  A year prior to the outbreak of the pandemic, Tenant and plaintiff Newbury-284 Nominee Trust (Landlord) entered into an amendment of Lease under the terms of which Landlord agreed to "endeavor to secure a replacement tenant to lease the Premises on terms and conditions satisfactory to Landlord…."  Despite its contractual obligation, Landlord failed to take commercially reasonable steps to re-let the premises.

As a result of the business interruption caused by COVID-19, Tenant was unable to pay rent.  Landlord terminated the lease and brought this action against Guarantor only to recoup "liquidated damages" approaching $6 million, an amount allegedly representing the sum of the

unpaid rent plus the rent that would be payable over the remainder of the term of the lease.  In its Answer, Guarantor raised a number of affirmative defenses including that Landlord's claims are barred (in whole or in part) because of Landlord's own breach of the Lease, Landlord's failure to mitigate its damages, frustration of purpose, as well as other equitable defenses.  These defenses address issues of Tenant's—and by extension Guarantor's—liability as well as damages and require discovery before Guarantor can oppose the summary judgment motion.  The motion should be stayed until after discovery is completed and Guarantor is given a full and fair opportunity to oppose the motion on the merits.

## II.    RELEVANT FACTUAL BACKGROUND

Landlord is the owner of real property located at 284 Newbury Street, Boston, Massachusetts (Premises).  (Doc. No. 24-1 ¶1).  On August 31, 2012, Landlord entered into a lease with Tenant for Premises.  (Doc. No. 24-1 ¶3).  GBG executed a guaranty (Guaranty) in connection with the Lease.  (Doc. No. 24-1 ¶4).  Nearly a year before the start of the COVID pandemic, on May 2, 2019, Landlord and Tenant entered a First Amendment to the Lease.  (Doc. No. 24-1 ¶6).  In consideration for granting Landlord the option to terminate the Lease term upon sixty days' written notice (the so-called "Early Termination Date"), Landlord pledged to "endeavor to secure a replacement tenant to lease the Premises on terms and conditions satisfactory to Landlord…. (the 'Replacement Lease')."  (Doc. No. 24-1 Ex. 3 ¶¶1-2).

On March 23, 2020, Governor Charlie Baker issued an emergency order requiring all businesses in the Commonwealth that do not provide "COVID-19 Essential Services" to close their physical workspace and facilities to workers, customers and the public as of Tuesday, March 24, 2020 (Government Mandated Shutdown) (Governor's COVID-19 Order No. 13). These restrictions remained in place through June 8, 2020 at which time retail businesses were

allowed to reopen at 40% of their prior capacity or no more than 8 people per 1,000 square feet (including staff) (Governor's COIVD-19 Order No. 37).  As of March 22, 2021, retail stores were allowed to operate with 50% of the building's maximum permitted occupancy.  *See* Safety standards and Checklist: Retail Business (available at: https://www.mass.gov/info-details/safety-standards-and-checklist-retail-businesses).

Tenant did not pay Rent in April 2020.  (Doc. No. 24-1 ₽10).  On April 17, 2020, Landlord notified Tenant it was in default of its obligations under the Lease for its failure to pay Rent and that it had ten (10) days to cure its default (Notice of Default).  (Doc. No. 24-1 ₽11).  By letter dated April 23, 2020, Guarantor notified Landlord that—because of the Government Mandated Shutdown—Tenant was forced to close its business and would remain closed during the period of the Government Mandated Shutdown.  (Doc. No. 24-1 ₽12 and Ex. 5).

On August 31, 2020, Landlord and Tenant entered a Second Amendment to the Lease under the terms of which Tenant affirmed it had ceased business operations and surrendered the Premises to Landlord.  (Doc. No. 24-1 ₽₽15-16 and Ex. 7).  By written notice dated October 9, 2020, Landlord terminated the Lease pursuant to Section 11.1 of the Lease as a result of Tenant's failure to pay April 2020 rent.  (Doc. No. 24-1 ₽17 and Ex. 8).  Landlord opted to exercise a remedy under Section 11.1.3 of the Lease authorizing the recovery of unpaid rent and liquidated damages.  (Doc. No. 24-1 ₽18 and Ex. 8).  Following that, Landlord made demand upon Guarantor for payment of $5,726,277.72 allegedly representing the unpaid and accrued rent plus liquidated damages.  (Doc. No. 24-1 ₽18 and Ex. 9).

### III.   PROCEDURAL BACKGROUND

Landlord initiated this action by filing a Complaint against GBG only on November 3, 2020 asserting a single cause of action for breach of Guaranty.  GBG filed its Answer on

December 18, 2020 and asserted thirteen affirmative defenses including that it was excused from performance because Landlord breached the Lease by failing to find a replacement tenant and mitigate its damages.  (Doc. No. 9 pp. 5-6) (Second and Eighth Affirmative Defenses).[1]  GBG also asserted other contract-based defenses including frustration of purpose caused by the Government Mandated Shutdown and equitable defenses.  (Doc. No. 9 pp. 6) (Ninth and Eleventh Affirmative Defenses).

### IV.    SCHEDULING CONFERENCE, LANDLORD'S INITIAL DISCLOSURES, AND THE COMMENCEMENT OF DISCOVERY

An initial Scheduling Conference was held on Tuesday, February 23, 2021.  In advance of that conference, the parties submitted a Joint Statement.  (Doc. No. 20).  Landlord took the position that "this matter [could] be resolved via summary judgment without the need for discovery."  (Doc. No. 20 p. 1).  GBG, on the other hand, laid out factual issues that required discovery and requested that the Court adopt a schedule allowing fact discovery through August 24, 2021.  (Doc. No. 20 p. 3).  The Court (Cabell, J.) adopted Guarantor's proposed discovery schedule.  (Doc. No. 21).

On February 26, 2021, Landlord served its Rule 26(a) Initial Disclosures in which Landlord identified six (6) persons Landlord believes have "discoverable information" relative to the following topics: "Tenant's tenancy and default, Tenant's payment history, communications between Tenant and Landlord, the Lease and Amendments thereto, the Guaranty and Guarantor's obligations thereunder, and Guarantor's affirmative defenses."  Declaration of John F. Farraher, Jr. ¶12 and Ex. A (hereinafter, "Decl. ¶").  Each of the individuals listed in the disclosure are believed to be current or former employees of Landlord or Landlord's affiliate.  *Id*.  Landlord's

---

[1]     The Answer was filed by GBG's prior counsel, K&L Gates, LLP.  Greenberg Traurig filed its Notice of Appearance on behalf of GBG on January 27, 2021 (Doc. Nos. 13-14) and, following that, K&L Gates withdrew from this action on January 29, 2021.  (Doc. Nos. 17-18).

Initial Disclosures also identified "categories of documents it may use to support its claim" including "[c]ommunications with Tenant and Guarantor."  Decl.  Ex. A.

Three days after the Scheduling Conference, GBG served its first set of interrogatories pursuant to Rule 33 upon plaintiff on February 26, 2021.  GBG served its first request for production of documents pursuant to Rule 34 on March 1, 2021.  Decl.  ¶13 and Exs. B and C. By operation of the Federal Rules of Civil Procedure, GBG's responses to the first set of interrogatories were due March 28, 2021 and its responses to the first set of document request were due March 31, 2021.  Landlord requested an extension of time to respond to the GBG's discovery request, which GBG granted.  *Id*.

### A.    Subpoena Duces Tecum Served Upon CBRE, Inc.

The Declaration of David Mallen filed on March 16, 2021 in support of Landlord's motion for summary judgment states that Landlord hired CBRE, Inc. "to find a new tenant for the Premises."  (Doc. No. 24-1 ¶21 and Ex. 4).  Despite Landlord's pronouncement in its Initial Disclosures that it identified persons with knowledge relating to "Guarantor's affirmative defenses" it did not identify CBRE (generally) or any broker(s) (specifically).  After clearing conflicts, undersigned counsel caused a document subpoena to be served upon CBRE on April 1, 2021 requesting that CBRE provide documents related to its efforts to locate a replacement tenant on or before April 22, 2021.  Decl.  ¶15 and Ex. D.

### V.    GUARANTOR DID NOT WAIVE TENANT'S DEFENSES

Landlord advances a number of arguments in its summary judgment motion in support of its claim that GBG owes Landlord nearly $6 million under the Guaranty.  After fact discovery is completed, GBG will oppose the motion for summary judgment on the merits.  With that caveat, Landlord's argument that GBG waived "all defenses"—including the right to assert the equitable

and legal defenses of its principal, the Tenant—and therefore does not need discovery is simply wrong.

A "guaranty" is a promise to pay a debt or perform a duty in case of a default of another person, *who is liable in the first instance*. *Charlestown Five Cents Savings Bank v. Wolf*, 309 Mass. 547, 549 (1941) (emphasis added) ("[t]he ordinary meaning of the word is that someone else is primarily liable for a debt and that the guarantor will pay if the primary debtor does not."); *Miara v. First Allmerica Financial Life Ins. Co.*, 379 F.Supp.2d 20, 63 (D. Mass. 2005) (*citing* BLACK'S LAW DICTIONARY 724 (8th ed.2004) ("A 'guaranty' is defined as '[a] promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another who is liable in the first instance.'"). A guaranty is a secondary promise to pay and only "activates" when and if the primary debtor defaults on its promise to pay monies due and owing. *Cadle Co. v. Webb*, 66 Mass. App. Ct. 269, 272 (2006).

A guaranty is a contract "like all other contracts." *Merchants Nat'l Bank v. Stone*, 296 Mass. 243, 250 (1936). The liability of a guarantor is to be ascertained from the terms of the written contract construed according to the usual rules of interpretation. *Braintree Property Associates, LP v. Marzouki*, 2017 WL 5329880, at *4 (Mass. Super. Ct. Sept. 26, 2017). Thus, "[w]hen the words of the [guaranty] are clear they alone determine the meaning of the contract but, when a contract term is ambiguous, its import is ascertained from the parties' intent as manifested by the guaranty's terms and the circumstances surrounding its creation…." *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 723 (1977). "Language is ambiguous where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." *Ferri v. Powell-Ferri*, 476 Mass. 651, 654 (Mass. 2017)(internal quotation omitted). "As a general rule, a writing is construed against the

author of the doubtful language.  *Merrimack Valley Nat'l Bank*, 373 Mass. at 724.

The liability of the guarantor cannot exceed the liability of the debtor.  *275 Washington Street Corp. v. Hudson River Intern*., LLC, 465 Mass. 16, 30 n. 11 (2013) (*quoting One South,Inc. v. Hollowell*, 963 So.2d 1156, 1165 (Miss. 2007) (after termination of lease "guarantors . . . were liable only to the extent that [the tenant] could be found liable"); *Merchants Nat'l Bank*, 296 Mass. at 251 ("When one guarantees the contract of another, the guarantor is bound by the terms of the contract guaranteed. His rights rise no higher than those of the principal obligor, and his obligations are coextensive with those of the principal obligor.").  A guarantor's own liability could not exceed the "tenant's payment obligations that arose under the terms of the lease."  *Cedar-Fieldstone Marketplace, LP v. T.S. Fitness, Inc*., 93 Mass. App. Ct. 33, 36 (2018).

GBG guaranteed the performance of the "Lease on the part of Tenant to be performed and observed."  (Doc. No. 24-1, Ex. 2 p.1).  In other words, GBG's guarantee is limited to Tenant's obligations arising under the Lease.  If Tenant, for example—as is the case here—has a defense to the payment of rent, then that defense may be asserted by the Guarantor and Guarantor is responsible to pay rent, if at all, only insofar as Tenant is obligated to pay rent.  Landlord is correct in stating that a guarantor can waive defenses available to its principal, but that did not happen here.  At best, Guarantor waived the so-called "suretyship defenses," but they do not affect the Guarantor's right to assert *Tenant's defenses under the Lease*.

In construing a contract, words matter.  In this case, the Guaranty states that Guarantor only waived "suretyship defenses and defenses of like nature (other than the defense of payment)."  (Doc. No. 24-1, Ex. 2 p.1).  "Suretyship defenses" are not defined in the Guaranty, nor does Landlord cite any Massachusetts authority defining the scope and nature of "suretyship

defenses." Section 19 of the *Restatement (Third) of Suretyship & Guaranty* (1996) (Restatement) identifies several "suretyship defenses" available to the "secondary obligor"—*viz*, a guarantor.[2] The defenses—which are described in Sections 37-45 of the Restatement—are defenses available to a guarantor seeking relief from obligations *arising under a guaranty*. Importantly, the suretyship defenses do not include defenses available to the principal or otherwise alter the general rule that a guarantor may avail itself of all defenses available to its principal. Assuming that "suretyship defenses" means the type of defenses recognized by the Restatement, then Guarantor waived those specific defenses only. It does not mean, however, that Guarantor waived *all defenses*, including the defenses available to Tenant under the Lease. If the parties' intended the Guarantor to waive all defenses, they would have said so in the Guaranty (which was drafted by Landlord) but did not. Instead, the waiver is limited to "suretyship defenses," which appear to be limited to the type of defenses contained within the Restatement.

## VI.   LEGAL STANDARD APPLICABLE TO RULE 56(D)

Where a nonmovant such as GBG has had inadequate opportunity for discovery prior to a motion for summary judgment, Federal Rule of Civil Procedure 56(d) provides a "safeguard against judges swinging the summary judgment axe too hastily." *Bluetarp Financial Inc. v. Eastern Materials Corp.*, 592 F.Supp.2d 188, 189 (D. Maine 2009) (*quoting Resolution Trust*

---

[2]    While Guarantor was unable to locate any case on point, it is "likely" that Massachusetts courts would adhere to the principles set forth in the Restatement, including recognition of the "suretyship defenses." *John T. Callahan & Sons, Inc. v. Dykeman Elec. Co.*, 266 F.Supp. 2d 208, 237-38 (D. Mass. 2003); *see also Eagles v. McCabe,* 80 Mass. App. Ct. 1116, at *1 n. 4 (finding the Restatement (Third) of Suretyship and Guaranty [] is consistent with principles of contract and suretyship law that have been adopted in Massachusetts)]. Indeed, while not labeled as such, Massachusetts courts have recognized defenses similar to those set forth in the Restatement as justification for relieving a guarantor of its obligations *arising under a guaranty*. *See e.g., Manufacturers' Finance Co. v. Rockwell*, 278 Mass 502, 505 (1931) ("It is familiar law that a creditor, who gives further time to a debtor, releases sureties of the contract so extended unless the surety assents to the extension of time." This is similar to the suretyship defense memorialized in Section 40(b) of the Restatement.); *Charlestown Five Cents Savings Bank*, 309 Mass. at 550 (A release given by the payee to the maker of a note releases a guarantor's liability. This is similar to the suretyship defense memorialized in Section 39(c) of the Restatement).

*Corp. v. N. Bridge Assocs., Inc*., 22 F.3d 1198, 1203 (1st Cir. 1994)).  The First Circuit has warned that "trial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery." *E.E.O.C. v. Texas Roadhouse, Inc.,* 2014 WL 7448524, at *2 (D. Mass. Nov. 17, 2014) (internal citations omitted).  Any potential problem with a premature summary judgment motion can be dealt with under Fed. R. Civ. 56(d).  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986).

"Under Rule 56(d), '[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition' to a motion for summary judgment, then the district court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order.'"  *In re PHC, Inc. Shareholder Lit.,* 762 F.3d 138, 143 (1st Cir. 2014) (*quoting* Fed. R. Civ. P. 56(d)).  The First Circuit has noted that "Rule 56(d) serves a valuable purpose" in that "[i]t protects a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion." *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.,* 730 F.3d 23, 28 (1st Cir. 2013).  "Such a need may arise because, say, a party has not had a fair opportunity to conduct necessary discovery." *Id.* Moreover, the rule "provides a safety valve for claimants genuinely in need of further time to marshal 'facts, essential to justify [their] opposition . . . to a summary judgment motion.'" *In re PHC, Inc. Shareholder Lit.,* 762 F.3d at 143 (internal citations omitted).  District courts generously interpret motions invoking the rule, "holding parties to [its] spirit rather than its letter," and First Circuit courts have generally required only substantial, not perfect compliance with the rule. *Resolution Trust Corp.,* 22 F.3d at 1203*; see also Maldonado v. Municipality of Barceloneta,* 252 F.R.D. 113, 117 (D.P.R. 2008).

In order to successfully invoke Rule 56(d), the nonmovant must provide a declaration that: "(i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion." *Hicks v. Johnson,* 755 F.3d 738, 743 (1st Cir. 2014) (*quoting Velez v. Awning Windows, Inc.,* 375 F.3d 35, 40 (1st Cir. 2004)0; *see also Rivera–Torres v. Rey–Hernández*, 502 F.3d 7, 10 (1st Cir. 2007). Courts in the First Circuit have routinely distinguished between cases in which discovery is in the advanced stages and cases like this one, where little or no discovery has been conducted. *Blue Tarp Financial*, Inc., *v. Eastern Materials Corp.*, 592 F.Supp.2d 188, 190-191 (D. Me. 2009); *See, e.g.*, *Maldonado*, 252 F.R.D. at 117–18; *Chapman v. Maine Dep't of Corrections*, No. 04–103–B–H, 2005 WL 226222, at *3 (D. Me. Jan. 31, 2005); *see also Crystalline H2O, Inc. v. Orminski*, 105 F.Supp.2d 3, 6–7 (N.D.N.Y. 2000). In fact, courts have cautioned that summary judgment should be granted against a party who has not been afforded the opportunity to conduct discovery "[o]nly in the rarest of cases." *Blue Tarp Financial*, 592 F.Supp.2d at 190 (*quoting Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)).

## VII.   DISCOVERY NEEDED BEFORE GUARANTOR CAN OPPOSE SUMMARY JUDGMENT OR PROCEED TO TRIAL

As of the date hereof, and because discovery only started 52 days ago, no documents or interrogatory answers have been provided by Landlord.[3]  Nor has GBG received documents from CBRE, and no depositions have been taken. The focus of the discovery sought thus far concerns Landlord's efforts to find a replacement tenant and mitigate its damages, as required by Section 1 of the First Amendment of the Lease. Specifically, GBG is seeking discovery as follows:

---

[3]      As noted above, GBG agreed to extend the deadline for Landlord to respond to the Rule 33 and 34 requests.

**A.    The steps taken by Landlord to fulfill its obligations as set forth in Section 1 of the First Amendment of Lease to locate a replacement tenant and mitigate its damages.**

Mr. Mallen states in his declaration that Landlord hired CBRE to help find a replacement tenant.  (Doc. No. 24-1 ¶9).  Curiously, Mr. Mallen does not specify when CBRE was hired, and the agreement purportedly entered between Landlord and CBRE (attached as Exhibit 4 to his declaration) states it "shall commence on the date it is fully executed," but Exhibit 4 is not signed by CBRE.  (Doc. No. 24-1, Ex. 4).  When, if ever, did CBRE execute the agreement?  When, if at all, did CBRE begin marketing the Premises?  What did CBRE do to market the Premises?  Did Landlord take any other steps to secure a replacement tenant?

In an August 19, 2020 e-mail to Guarantor—sent *fifteen (15) months after* the First Amendment—Mr. Mallen states "landlord *plans to* engage a broker to actively market the [Premises], place signage on the building indicating the [Premise] is available and show the premises to prospective tenants in the ordinary course."  (Doc. No. 24-1, Ex. 7).  This e-mail suggests that—as of August 2020— Landlord had not engaged a broker to find a replacement tenant almost a year after the execution of the First Amendment (May 2, 2019).  If this is the case, what was the substantial delay between the effective date of the First Amendment and August 2020?

**B.    GBG is also seeking discovery to determine whether any Person expressed an interest in leasing, licensing, or purchasing the Premises and Landlord's responses to these inquiries.**

Landlord's damage calculations attached as Exhibit 10 to the Mallen declaration identify two "potential new tenants" (Marc Harris and Tim Oulton) but provides no information concerning the material terms of the Replacement Lease (or anticipated Replacement Lease) including the effective date(s) of the Replacement Lease(s), the amount of space leased, and the

rent required to be paid under the terms of the Replacement Lease(s).  Were there any other Persons that expressed an interest in leasing or purchasing the Premises?  What terms were offered?  What was Landlord's response?

GBG also believes that Landlord or an affiliated company own other property located on, or in the vicinity of, Newbury Street, Boston, Massachusetts and seeks discovery as to whether Landlord leased those properties to a tenant that otherwise was interested in Leasing the Premises.

### C.    Potentially Necessary Depositions

Based on information currently available, and after GBG receives and reviews documents produced in response to its Rule 34 request and the third-party subpoena, GBG anticipates the need to take the following depositions:

1.  **Landlord Rule 30(b)(6)**:  GBG reasonably believes Landlord possesses information concerning the First Amendment of Lease including, without limitation, Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidate damage clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant; the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person.

2.  **Trustee David Mallen**:  Based in part upon information contained in Landlord's Initial Disclosures made pursuant to Rule 26(a) and information contained in his declaration filed in this action, GBG reasonably believes Trustee Mallen possesses information concerning the First Amendment of Lease including, without limitation,

Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidated damages clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant; the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person; and "Guarantor's affirmative defenses."

3. **Trustee Thomas Wilder**:  Based in part upon information contained in Landlord's Initial Disclosures made pursuant to Rule 26(a), GBG reasonably believes Trustee Wilder possesses information concerning the First Amendment of Lease including, without limitation,  Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidated damages clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant; the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person; "Tenant's tenancy and defaults" and "Guarantor's affirmative defenses."

4. **Andy LaGrega**: Based in part upon information contained in Landlord's Initial Disclosures made pursuant to Rule 26(a), GBG reasonably believes Mr. LaGrega possesses information concerning the First Amendment of Lease including, without limitation,   Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidated damages clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant;

the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person; "Tenant's tenancy and defaults" and "Guarantor's affirmative defenses."

5. **<u>Paige Quigley</u>**: Based in part upon information contained in Landlord's Initial Disclosures made pursuant to Rule 26(a), GBG reasonably believes Ms. Quigley possesses information concerning the First Amendment of Lease including, without limitation,  Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidated damages clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant; the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person; "Tenant's tenancy and defaults" and "Guarantor's affirmative defenses."

6. **<u>Matt Joyce</u>**: Based in part upon information contained in Landlord's Initial Disclosures made pursuant to Rule 26(a), GBG reasonably believes Mr. Joyce possesses information concerning the First Amendment of Lease including, without limitation,  Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidated damages clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant; the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person; "Tenant's tenancy and defaults" and "Guarantor's affirmative defenses."

7. **<u>Chrissi Kockanski</u>**: Based in part upon information contained in Landlord's Initial Disclosures made pursuant to Rule 26(a), GBG reasonably believes Ms. Kockanski possesses information concerning the First Amendment of Lease including, without limitation,   Landlord's obligation to "secure a replacement tenant to lease the Premises" and discussion or negotiations related to the Lease's liquidated damages clause; the identity of all Persons (brokers, real estate, marketing, promotional, and/or advertising companies) hired or engaged by Landlord to locate a replacement tenant; the terms and conditions upon which Landlord leased or licensed the Premises (or any portion thereof) to any Person; "Tenant's tenancy and defaults" and "Guarantor's affirmative defenses."

8. **<u>CBRE, Inc. Rule 30(b)(6)</u>**:  GBG reasonably believes CBRE possesses information concerning the: material terms of CBRE's engagement by Landlord to find a replacement tenant; efforts undertaken by CBRE and Landlord to locate a replacements tenant; the identity of any Person expressing an interest in leasing, licensing or purchasing the Premises.

9. **<u>Marc Harris</u>**: Based in part upon information contained in Trustee Mallen's declaration (Doc. No. 24-1), GBG reasonably believes a representative of Marc Harris may have information concerning a replacement tenant.

10. **<u>Tim Oulton</u>**: Based in part upon information contained in Trustee Mallen's declaration (Doc. No. 24-1), GBG reasonably believes a representative of Tim Oulton may have information concerning a replacement tenant.

## VIII.   CONCLUSION

For the forgoing reasons, GBG respectfully requests that this Court stay Landlord's Motion for Summary Judgment and grant GBG an opportunity to conduct the discovery described herein in accordance with the schedule established by the Court (Doc. No. 21).  In the alternative, if the Court denies the relief requested under Rule 56(d), Guarantor seeks leave to file an opposition to the motion for summary judgment.

Respectfully Submitted,

GBG USA INC.

By its attorneys,

/s/ John F. Farraher, Jr.
John F. Farraher, Jr., BBO No. 568194
Angela C. Bunnell, BBO No. 690429
GREENBERG TRAURIG, LLP
One International Place, Ste. 2000
Boston, MA 02110
Phone: 617-310-6029
Fax: 617-310-6000
farraherj@gtlaw.com
bunnella@gtlaw.com

DATED:  April 16, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those identified as non-registered participants on April 16, 2021.

/s/ John F. Farraher, Jr.